## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN SOUTHERN            :
INSURANCE COMPANY         :
                                     :
                                     :
         v.                          :     Civil No. CCB-16-728
                                     :
                                     :
ANNE ARUNDEL COUNTY, ET AL.    :
                                     :

## MEMORANDUM

Plaintiff American Southern Insurance Company ("American Southern") brought this action against Anne Arundel County (the "County") and Ridge Forest Glen Homeowners Association, Inc. ("Homeowners Association"), requesting a declaratory judgment that American Southern has no obligations as surety to pay for repairs on the alleged stormwater management violations at Ridge Forest Glen Subdivision. Plaintiff also requests a declaratory judgment that the Homeowners Association and the County are responsible for the past ten years' maintenance on the stormwater management system.

Pending before the court are the defendants' motions to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Anne Arundel Mot. Dismiss, ECF No. 5; Homeowners Ass'n Mot. Dismiss, ECF No. 9). American Southern filed a response in opposition (American Southern Opp'n Mot. Dismiss, ECF No. 14), to which Anne Arundel County filed a reply that the Homeowners Association joined and adopted. (Anne Arundel Reply Opp'n Mot. Dismiss, ECF No. 15; Homeowners Ass'n Reply Opp'n Mot. Dismiss, ECF No. 16). The motions are fully briefed, and no oral argument is

necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the defendants'

motions to dismiss will be denied, but the case will be stayed pending resolution of Case No. C-

02-CV-16-001039 in the Circuit Court for Anne Arundel County.

## BACKGROUND

In 2002, Route 100 Ridge Road, LLC ("Developer") began development of the Ridge

Forest Glen Subdivision in Hanover, Maryland. (Compl. ¶ 7, ECF No. 1; Homeowners Ass'n

Mot. Dismiss 2). As part of the subdivision development, the County issued grading permit

G02009603 on December 13, 2002, to the Developer for the proposed grading, sediment control,

and stormwater management of sixty-three lots and common areas. (Compl., Ex. C, Grading

Permit, ECF No. 1-6; Homeowners Ass'n Mot. Dismiss 2). The County required the Developer

to post security for the good and faithful performance of the work required in the grading permit

as a condition of granting the permit. (Compl. ¶ 17). American Southern issued Grading and

Sediment Control Bond No. B98800010783 (the "Bond") on July 8, 2004, in the amount of

$126,000, naming the County as obligee. (Compl., Ex. D, Grading and Sediment Control Bond,

ECF No. 1-7).

On August 11, 2014, the County inspected Ridge Forest Glen subdivision and found

numerous violations of Article 16 of the Anne Arundel County Code, including failure to

maintain a stormwater management practice, failure to comply with the permit, failure to submit

as-builts and certifications, and failure to complete an expired permit. (Compl., Ex. G,

Stormwater Management Violation Notice 1, ECF No. 1-10). The County notified the Developer

and American Southern of the violations, included in its notification a list of corrective measures,

and mandated that curative work begin on September 12, 2014. (*Id.* 2). The County warned that

"failure to comply with the requirements of this notice will be cause for the Department to proceed with bond default." (*Id.*).

American Southern believes the Homeowners Association is liable for any stormwater management maintenance through its relationship with the Developer under the Declaration of Covenants (Compl. Ex. A, ECF No. 1-4), Inspection and Maintenance Agreement (Compl. Ex. B, ECF No. 1-5), and Common Areas Deed. (Compl. Ex. F, ECF No. 1-9; Compl. ¶¶ 9-15, 24-27). The Homeowners Association denies any liability for the repairs the County is demanding. (Compl. ¶ 35).  American Southern maintains that the Grading Permit expired on January 1, 2007, and that the Developer no longer owns, possesses, or controls any property within Ridge Forest Glen. (Compl. ¶¶  20,28).

The Developer failed to complete the curative work.[1] (Homeowners Ass'n Mot. Dismiss 2). The County informed American Southern it would initiate litigation on or before June 1, 2016, if American Southern refused to honor its obligations under the Bond. (Anne Arundel Mot. Dismiss 1; Compl. ¶ 36). American Southern "exchanged correspondence with" and "participated in meetings" with the County, the Homeowners Association, and the Developer; however, the parties were unable to resolve the dispute about the requested repairs. (Compl. ¶ 33-34). American Southern filed this declaratory judgment against the County and the Homeowners Association on March 11, 2016. Subsequently, on March 23, 2016, the County filed a breach of contract suit against American Southern in the Circuit Court for Anne Arundel County. (Anne Arundel Mot. Dismiss 2).

## ANALYSIS

This court has diversity jurisdiction over the case, 28 U.S.C. § 1332(a), because the

---

[1] The Developer's LLC was forfeited on October 2, 2009. (Homeowners Ass'n Mot. Dismiss 2, n. 1).

parties are diverse and the amount in controversy exceeds $75,000. The suit is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), as the sole relief sought in the complaint is the declaration of the parties' rights under the Bond, the Declaration of Covenants, the Common Areas Deed, and the Inspection and Maintenance Agreement. The central question presented by defendants in their motions is whether the court should exercise its discretion to issue a declaratory judgment.

The Declaratory Judgment Act  is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Even where a declaratory judgment action "otherwise satisfies subject matter jurisdictional prerequisites," the district court "possess[es] discretion" in determining whether to entertain the suit. *Id.* at 282; *see also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). The Fourth Circuit has long recognized "the discretion afforded to district courts in determining whether to render declaratory relief." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421–22 (4th Cir. 1998). This discretion is especially "crucial when . . . a parallel or related proceeding is pending in state court." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005).

In determining whether to exercise jurisdiction in a declaratory judgment action, the district court must "weigh considerations of federalism, efficiency, and comity." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)); *see also New Wellington Fin. Corp.*, 416 F.3d at 297. The Fourth Circuit has articulated four factors for district courts to consider when

determining whether to abstain from exercising jurisdiction over a declaratory judgment action

during the pendency of a parallel state proceeding:

> (1) [W]hether the state has a strong interest in having the issues decided in its courts; (2) whether state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493–94 (quoting *Nautilus Ins.*, 15 F.3d at 377).

As to the first *Kapiloff* factor, the strength of the state interest in having the issues

decided in its courts is not compelling enough to weigh against federal jurisdiction. In order for

the state to have a strong interest in having the issues decided in its courts, the questions of state

law raised in the federal action must be "difficult" or "problematic." *Nautilus Ins.*, 15 F.3d at

378. It is not enough that the issues of law raised in the federal action are governed entirely by

substantive state law. *Id.* Where the federal case involves "the routine application of settled

principles of law to particular disputed facts," the state's interest is not "sufficiently compelling

to weigh against the exercise of federal jurisdiction." *Id.*; *see also Centennial Life Ins. Co. v.*

*Poston*, 88 F.3d 255, 258 (4th Cir. 1996) ("[A]lthough only state law is at issue, the relevant state

law is not problematic or difficult to apply, which weakens somewhat the state's interest in

having these issues decided in state court."). While the provisions of the Bond will be interpreted

using the substantive law of the State of Maryland, the issue is unlikely to turn on a novel

question of Maryland law. As a result, this factor does not favor either side.

The second *Kapiloff* factor, focusing on the concerns of efficiency, cuts both ways. The

primary focus in evaluating efficiency concerns is "whether the questions in controversy between

the parties to the federal suit . . . can be better settled in the proceeding pending in the state

court." *Brillhart*, 316 U.S. at 495. This requires consideration as to "the scope of the pending

state court proceeding," including whether all parties' claims can be successfully adjudicated in

state court and whether all necessary parties have been joined in the state action. *Id.*;  *see also*

*Poston*, 88 F.3d at 258 (affirming the district court's decision to abstain because the state court

action "contain[ed] a defendant and a number of issues not present in the federal action").

Here, the federal court action includes the Homeowners Association, not a party to the

pending state court action, suggesting the federal action would be more efficient in resolving all

interested parties' rights. On the other hand, a resolution in the state court breach of contract case

would resolve the plaintiff's liability in the federal court action, regardless of the Homeowners

Association's involvement.

There is a legitimate concern of entanglement, the third *Kapiloff* factor, weighing in favor

of abstention from federal jurisdiction. Federal courts should decline "to entertain a declaratory

action that could result in entanglement between the two court systems." *Mitcheson v. Harris*,

955 F.2d 235, 239 (4th Cir. 1992). Concerns about entanglement primarily turn on the preclusive

effect the declaratory judgment action will have on the state action. *Id.* at 239–40. Where both

actions "raise[] the same core issues of law and fact," and are both "aimed at determining the

rights of parties under [an] insurance policy," there is a genuine possibility of entanglement

between state and federal courts. *Kapiloff*, 155 F.3d at 494.

Here, the state court breach of contract claim and the federal declaratory action are both

aimed at determining the rights of the parties under the 2004 Bond. A ruling in the declaratory

judgment action likely would have a preclusive effect on the state court action because the cases

involve the same core issues of law and fact. Accordingly, there is a genuine possibility of entanglement that weighs in favor of federal abstention.

Finally, the fourth *Kapiloff* factor asks whether the federal action is mere procedural fencing, which American Southern's actions suggest. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great American Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). Procedural fencing also can occur where the federal filing precedes the state filing: the Fourth Circuit has counseled against placing "undue significance on the race to the courthouse door" in parallel proceedings in state court, particularly when the federal plaintiff had constructive notice of the defendant's intent to sue in state court. *Poston*, 88 F.3d at 258.

Although American Southern filed in federal court prior to the commencement of the County's state court action, the County had earlier threatened to initiate state court litigation on or before June 1, 2016. Filing the federal declaratory action when it had advance notice a state court action would be forthcoming suggests that American Southern was seeking to procure federal court jurisdiction. The indication that the federal action might be mere procedural fencing weighs in favor of federal abstention.

## CONCLUSION

Overall, the balance of *Kapiloff* factors weighs slightly in favor of federal abstention. The Supreme Court has advised that a stay is a better course of action than a dismissal, however, because "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n. 2.

Accordingly, the motions to dismiss will be denied without prejudice, but this case will be stayed

pending resolution of the state court litigation.

     A separate order follows.


_____9/15/16_____                           _____/S/_____

Date                                                Catherine C. Blake

                                                United States District Judge